## MUIR V. BOZARTH ET UX.

1. **Conveyance:** FRAUD: STATUTE OF LIMITATIONS. In an adjustment of disputed claims to land B., one of the claimants, in whom the title was conceded to be, gave a bond for a deed to M., the other claimant; in 1856; subsequently, upon payment of a part and tender of the balance of the purchase money, B. refused to convey and informed M.'s agent that he had conveyed to W., from whom he afterwards procured a reconveyance and on the same day tendered the deed to the former, who refused it until he should be able to ascertain if it was in B.'s power to give a deed; B. afterwards conveyed to G., but in a suit instituted by B. against the heirs of G., he testified that the conveyance was but a mortgage to secure advances of money; in 1873 M. brought an action to compel a conveyance and for an accounting of rents and profits: *Held*, that the action, being commenced within five years after the discovery · of the fraud, was not barred by the statute of limitations.

2. ———: ———: TENDER. The tender of the deed, under the circumstances and without giving the grantee's agent time to examine the title, was accompanied by such indicia of fraud that the grantor could derive no advantage therefrom.

3. ———: ———: HOMESTEAD. The fact that the property was a homestead could not be set up to defeat the rights of M.

4. ———: ———: RENTS AND PROFITS: LIMITATIONS. The plaintiff was *held* to be entitled to the rents and profits for five years preceding the commencement of the action.

### *Appeal from Decatur Circuit Court.*

### MONDAY, OCTOBER 23.

THIS is an action in equity for the conveyance of real estate, and an accounting of the rents and profits. The plaintiff's petition was dismissed, and he appeals.

*Warner & Bullock,* for appellant.

*Morrison & Robb* and *John W. Harvey,* for appellee.

DAY, J.—I. The facts in this case, which are clearly established by the testimony, are very fully and accurately stated · in the introduction to appellant's argument, as follows: "On the 19th day of September, 1854, the plaintiff, John Muir, entered the west half of ·

<div style="margin-left:2em">1. CONVEY-
ANCE: fraud:
statute of
limitations.</div>

the northeast quarter, section 2, township 67, range 26, in Decatur county, Iowa. At that time, and some eight months prior, the defendant, Jonathan Bozarth, owned in fee simple and resided on the east half of said quarter section. After the plaintiff entered the land in question, the defendant, Bozarth, with knowledge of plaintiff's entry, laid a foundation for a house on the land in dispute, and moved his house in which he was then living on the foundation, moved his family in the house, claimed pre-emption and commenced improving the land in dispute. On the 7th day of April (1855), defendant, in the absence of plaintiff and without his knowledge, proved up his pre-emption and entered the land in controversy. Afterwards plaintiff obtained a rehearing on defendant's pre-emption, and the cause was set for trial before the register of the land office at Chariton, Iowa, on the 8th day of November, 1856. On the 1st day of October, 1856, the defendants, Bozarth and wife, conveyed, by warranty deed, the land in dispute to one W. S. Warnock, his attorney. Plaintiff and defendant, Bozarth, met at Chariton on the 8th of November, 1856, and compromised. It was agreed that plaintiff was the owner of the land, but, as plaintiff's entry had been set aside, that defendant's entry should stand, and plaintiff was to withdraw his entrance money. Plaintiff was to pay defendant, Bozarth, three hundred dollars for improvements and entrance money, and Bozarth and wife were to make plaintiff a warranty deed to the land in dispute. Two hundred dollars were then paid to Bozarth, and one hundred dollars, by agreement, were left with one John Leachman to be paid defendant when he made a deed to the land.

Bozarth gave plaintiff a bond for a deed and contract to deliver possession of the land on the 1st day of May following. Plaintiff and defendant then separated; plaintiff went to his home in the State of Indiana, and defendant came with John Leachman to his home in Decatur county. Afterwards Bozarth refused to make the deed, and informed Leachman that he had conveyed the land in dispute to W. S. Warnock. Leachman immediately wrote to plaintiff of the refusal of defendant to make the deed, and of the conveyance to War-

nock. Muir wrote to Leachman to hold on to the bond and money.

On the 27th of March, 1857, Bozarth procured a reconveyance of the land from W. S. Warnock and wife, and on the same day made Leachman a tender of a deed from defendant and wife to John Muir, and demanded of Leachman the hundred dollars, without informing Leachman that he had procured a reconveyance from Warnock and wife. Leachman informed the defendant that he could not receive the deed until he could hear from Muir; defendant then said to Leachman, 'now or never,' and took the deed and went away. On the 15th day of June, 1857, the defendants, Bozarth and wife, conveyed the land by warranty deed to one Richard Groce. In the fall of 1857, plaintiff came to Iowa, tendered Bozarth one hundred dollars and demanded a deed for the land in dispute, which Bozarth refused to make. In 1857, plaintiff commenced an action on the bond against defendants to enforce the specific performance of the contract. Afterwards plaintiff learned of the conveyance to Groce, and by an amended or substituted petition, Groce and wife were made parties defendant to said action, alleging fraud as to Bozarth, and notice to Groce of plaintiff's equities, without any knowledge or information as to whether Groce had knowledge of plaintiff's rights or not. Bozarth and Groce both answered, denying notice to Groce of plaintiff's equities. Plaintiff, to sustain his action, took the deposition of defendant, Bozarth, who testified in said action that Groce had no notice or knowledge of plaintiff's equities at the time he conveyed the land to Groce; that the sale to Groce was absolute and in good faith so far as Groce was concerned. Plaintiff, believing from the testimony of defendant, Bozarth, that Groce was an innocent purchaser of the land in dispute, took a nonsuit. So the matter rested; the title to the land in dispute remaining in Richard Groce until December 17, 1870, when defendant, Bozarth, commenced an action against the heirs of Richard Groce to recover the legal title to the land in question, alleging the death of Groce, and that the conveyance from him to Groce was intended as a mortgage to

secure borrowed money, and that the money was paid back during Groce's lifetime.

On the trial of this cause, Bozarth testified to the allegations of the petition and the court decreed the land to defendant Bozarth, and appointed a commissioner who conveyed the land in dispute by deed to defendant, which deed was approved by the court, April 6th, 1871.

During all this time plaintiff resided in the State of Indiana, and in July, 1872, for the first time, he obtained knowledge that Bozarth had obtained the title to the land in dispute, and that his testimony in the original case between plaintiff and defendant, Bozarth, and Groce, was false in regard to Groce being a *bona fide* and an absolute purchaser without notice. On July 3d, 1872, plaintiff commenced this action. The land in dispute has been fenced and in a good state of cultivation from twelve to eighteen years, and defendant, Bozarth, received the rents and profits during all of this time, which were worth from two dollars to two dollars and fifty cents per acre per year."

These facts show that defendant acquired and has maintained title to the property in controversy, by frauds shocking to every sense of justice. He has been guilty not only of deception, and a violation of his contract, but of positive perjury. Where there has been such a gross violation of every principle of honesty, equity will discover some means of affording relief, unless some well defined principle of law obstructs the pathway to justice. The principal objection urged is that the plaintiff's action is barred by the statute of limitations. If this action were based solely upon the bond for conveyance, the statute of limitations would be an insuperable obstacle. But the conveyance to Groce introduced a new element. It cast upon plaintiff the necessity of showing, before he could have a specific performance of the agreement, that this conveyance was in fraud of his rights. After this conveyance was made, his action became of necessity one for relief on the ground of fraud. It is true, the bond for conveyance constitutes the primary ground of the obligation of defendant. But, if the deed to Groce was absolute and *bona fide*, the defendant

had created an obstacle to a decree of specific performance. This obstacle could be removed, and the relief desired obtained, only by showing that the deed to Groce was as to plaintiff fraudulent. That the deed was so fraudulent was not discovered until July, 1872, and this action was brought, at the farthest, within two days thereafter. The action is not, therefore, barred by the statute of limitations. Revision, section 2741.

It is objected, however, that plaintiff had full knowledge that the deed to Groce was fraudulent, as early as 1858, for that he alleges such fraud in the supplemental petition in the action against Bozarth and Groce. The testimony, however, fully shows that this allegation was made without any actual knowledge upon the subject, in the hope of being able to establish the fact by evidence, and that plaintiff submitted to a non-suit when Bozarth swore the conveyance was *bona fide*. It may, however, be urged, that plaintiff should have taken the testimony of Groce, and should not have acted upon that of Bozarth. A sufficient answer to this is that it does not lie in the mouth of Bozarth to object that plaintiff should not have believed and acted upon his testimony.

II. It is urged however that defendant preformed his whole duty when he tendered a deed to Leachman, and that from 2. —: —: that time he had a right to consider and treat the tender. agreement as rescinded. It is quite apparent that this tender was not made in good faith. Leachman had been advised of the conveyance to Warnock. Defendant made the tender upon the very day that Warnock reconveyed the property. He did not inform Leachman of the reconveyance. He would not allow Leachman an opportunity to confer with the plaintiff, but demanded that the tender should be accepted "now or never."

We are satisfied that he made the tender under such circumstances that he believed it would not be accepted, for the purpose of obtaining some advantage thereby. The tender is accompanied with the same indicia of bad faith which have characterized defendant's action throughout the whole proceeding.

III. It is further urged that the property is the homestead

of the defendants, and that the agreement to convey is void because not executed by the wife. The title to this property had its inception in fraud perpetrated against the plaintiff. The homestead character of the property cannot be set up against plaintiff nor be allowed to defeat his rights.

<div style="margin-left:1em"><em>3. ——: ——: homestead.</em></div>

IV. The defendant objects to most of the testimony by which plaintiff's claim is established, upon the ground that it is secondary. No such objection was made in the court below. It cannot for the first time be urged here. If the objection had been made at the proper time, the primary evidence might have been produced, or its absence accounted for.

V. The only questions which remain regard the right of the plaintiff to recover rents and profits. The defendant insists that until he executed a deed he was entitled to the possession, and that the plaintiff cannot recover rents. In support of the position appellee cites *Page v. Cole*, 6 Iowa, 153; *Holmes v. Schofield*, 4 Blackford, 171; *Wright v. Blakely*, 3 Indiana, 101. These authorities, as we understand them, do not sustain appellee's position. Nor can any satisfactory reason be given why, under the facts in this case, the plaintiff should be denied the right to recover the rents of the premises. At the time of the purchase of the premises, November 8th, 1856, plaintiff paid defendant $200 of the $300 of the consideration. Defendant entered into a contract to deliver possession of the land on the 1st day of May, 1857.

How can it be said that plaintiff, when he tendered the balance of the consideration money promptly under his contract, and demanded a deed, did not become entitled to the possession of the premises on the 1st day of May, 1857. True the defendant by a series of the grossest frauds kept from plaintiff the legal title, and deprived him of the power of recovering possession. Still he was entitled to the possession, under express contract, on the first of May, 1857, and having been deprived of his right, we do not see any legal principle which stands in the way of his recovering the value of that right in this action.

VI. The plaintiff asks an accounting for the rents for six

years preceding the commencement of the action. The six

**4. ——: ——: rents and profits: limitations.** year limitation prescribed in section 3576 of the Revision applies to the special actions named in that chapter for the recovery of real property by one having the legal title.

We think this action in so far as rents are concerned is governed by the general statute of limitations, Revision 2740, and that it is barred in five years. The plaintiff is entitled to rents of the premises at the rate of two dollars per acre, from five years prior to the commencement of the action to the present time.

There will be off-set against this sum the $100 unpaid balance on the purchase money.

REVERSED.